IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Derrick Vaughn Stevenson, | ) | No. CIV-07-1735-PHX-ROS (GEE) |
| Petitioner, | ) ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| vs. | ) ) | |
| Dora B. Schriro; et al., | ) ) | |
| Respondents. | ) ) | |
| _____ | ) | |

On September 10, 2007, Derrick Vaughn Stevenson, an inmate confined at the Arizona State Prison Complex in Buckeye, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2254. (Petition.) Stevenson claims (I) the pretrial identification procedures were unduly suggestive, (II) the jury instruction on premeditated murder was erroneous, and (III) trial counsel and appellate counsel were ineffective. *Id.* Before the court are the petition and the respondents' answer.

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Edmonds for report and recommendation. The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order denying the Petition for Writ of Habeas Corpus. The pretrial identification procedures were not unduly suggestive. The misleading jury instruction was harmless error. Trial counsel and appellate counsel were not ineffective.

Summary of the Case

On March 19, 2002, Stevenson was convicted after a jury trial of premeditated first-degree murder. (Respondents' answer, p. 13.)  The trial court imposed a sentence of life imprisonment with parole available after 25 years.  *Id.*

At the trial, the state presented evidence that Stevenson shot and killed his friend, Dwayne Curtis, after the two had an extended argument in the parking lot of a convenience market.  (Answer, pp. 2-5.)  The main issue at trial was the identity of the shooter.

The state presented two eye-witnesses to the altercation: Kimberly Ward and Francisco Maya.  (Answer, pp. 5-12.)  Neither one, however, identified Stevenson at the trial, which occurred two years after the shooting.  *Id.*  Ward was intentionally uncooperative.  *Id.*, pp. 9-10.  Maya may have simply forgotten what the shooter looked like due to the passage of time.  *Id.*, p. 12.

Nevertheless, the state introduced statements those witnesses made to police after the incident.  Ward told police the victim was talking to a black male, "about 25 years old," "very light skinned," "about 5 foot 9 inches," "real healthy like," with "Jerry curls," *Id.*, pp. 7-8.  She said that immediately after the shooting, the suspect ran to his car - a black Cadillac with a brown velvet top.  *Id.*  When detectives later showed Ward a photographic lineup, she identified Stevenson as the assailant.  *Id.*, p. 9.

Maya described the shooter to the police as a light-skinned black male, "kind of tall," "like kind of fat," larger and older than the victim.  *Id.*, p. 10.  After the shooting, Maya saw the assailant flee the scene in a Cadillac, which had a roof painted a lighter color than the body and "like a statue of a tire" on the trunk.  *Id.*, p. 11.  He also identified Stevenson's picture in a photographic lineup as the assailant.  *Id.*

Perhaps the most important identification evidence came from Bryan Sweeney, a friend of both Stevenson and the victim, Dwayne Curtis.  Curtis spoke to Sweeney on his cell phone the day of the shooting and was connected with him before and during his meeting with his assailant.  *Id.*, pp. 3-5.  Curtis told his friend Sweeney that Stevenson had previously complained to Curtis's girlfriend about a wagering debt Stevenson thought Curtis owed him.

*Id.*, p. 3.  Curtis explained he was meeting Stevenson (whom he called by his nickname, "Dizzy") that afternoon  and announced Stevenson's arrival saying, "Here the nigga' come now."  *Id.*, p. 4.  Sweeney then heard a second voice over the phone that he identified as Stevenson's.  *Id.*  Sweeney then heard the sounds of an argument that he assumed was about the alleged wagering debt.  *Id.*  He heard Curtis exclaim, "This nigger got a gun!" *Id*.  Curtis then asked, "Why do you have a gun?" and "What's this all about?"  *Id.*  Curtis then dropped the phone, and the line went dead.  *Id.*

Curtis's mother testified that Sweeney told her that Curtis's last words included statements such as: "Dizzy is tripping" and "Man, Dizzy has a gun!"  *Id.*, p. 5.

Sweeney identified Stevenson's picture in a photographic lineup as the man he knew for years as "Dizzy" and Derrick Stevenson.  *Id.*

The medical examiner testified that Curtis died from a gunshot wound to the back of his head.  *Id.*, p. 12.

After identifying Stevenson as a suspect, detectives established surveillance outside his residence.  *Id.*, p. 12.  Stevenson's neighbor reported that he had seen no activity at the residence during the month following the shooting.  *Id.*  He also noted the absence of a dark Cadillac that he had often seen parked outside Stevenson's residence.  *Id.*, p. 13.

Detectives traveled to Oregon and met with members of Stevenson's family in an effort to locate him.  *Id.*  Stevenson was eventually arrested by local law enforcement in Schaumberg, Illinois approximately 15 months after the shooting.  *Id.*

After the trial and sentencing, Stevenson filed a timely notice of appeal.  *Id.*, p. 13.  He raised the following issues: (1) The pretrial identification procedure was unduly suggestive; (2) "The trial court abused its discretion by precluding evidence of third-party culpability," (3) The first-degree murder statute is vague on its face and as applied; and (4) "The trial court abused its discretion by admitting autopsy photographs."  *Id.*, p. 14.

The court of appeals affirmed the conviction and sentences on June 3, 2003.  *Id.*, p. 15.  The Arizona Supreme Court denied review on February 10, 2004.  *Id.*, p. 17.

Stevenson filed a notice of post-conviction relief pursuant to Ariz. R. Crim. P. 32 on March 18, 2004. *Id.* In his pro per petition, he raised 12 claims: 9 claims that trial counsel was ineffective; one claim that appellate counsel was ineffective, one claim that the trial court improperly admitted hearsay, and two claims of prosecutorial misconduct. (Answer, pp. 17-25.)

The trial court denied the petition on January 12, 2005. *Id*, p. 26. The court found three claims precluded and one claim abandoned. *Id*. The court denied the remaining claims on the merits. *Id.*, pp. 26-28. Stevenson appealed raising claims of ineffective assistance of counsel and prosecutorial misconduct. *Id*., p. 29. He further disputed the trial court's ruling on preclusion. *Id*. The court of appeals summarily denied review on May 16, 2006. *Id.*, p. 32.

On June 28, 2006, Stevenson filed the instant Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2254. (Petition.) He claims (I) the pretrial identification procedures were unduly suggestive, (II) the jury instruction on premeditated murder was erroneous, and (III)(a) trial counsel was ineffective in his (1) "[h]andling of victim's hearsay admitted through Sweeney at trial"; (2) "[h]andling of identification issue for failure to clarify record, offer actual identification witnesses' testimony and argue proper legal principles"; and (3) "[f]ailing to object to or otherwise preserve for review 6 specific instances of prosecutorial misconduct," and (III)(b) appellate counsel was ineffective for (1) "[f]ailure to present the correct photo lineup as part of the direct appeal"; and (2) "[f]ailure to argue cumulative error from the 5 instances of prosecutorial misconduct." *Id*., p. 25. The respondents filed an answer on May 23, 2008. They assert the majority of Stevenson's issues are procedurally defaulted. They argue the remaining grounds for relief should be denied on the merits. Stevenson did not file a reply.

Discussion

The writ of habeas corpus affords relief to prisoners in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241. If the petitioner is in custody pursuant to the judgment of a state court, the writ shall not be granted unless prior adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The petitioner must shoulder an additional burden if the state court considered the issues and made findings of fact.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254 (e)(1).

A decision is "contrary to" Supreme Court precedent if the "state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from Supreme Court precedent." *Vlasak v. Superior Court of California ex rel. County of Los Angeles,* 329 F.3d 683, 687 (9th Cir. 2003). A decision is an "unreasonable application" if "the state court identified the correct legal principles, but applied those principles to the facts of her case in a way that was not only incorrect or clearly erroneous, but objectively unreasonable." *Id.* "It is not enough that our independent review of the legal question leaves us with a firm conviction that the state court decision was erroneous." *Id.* If the state court denied on the merits but did not explain its reasoning, this court must independently review the record to determine whether the state court clearly erred in its application of Supreme Court law. *Pirtle v. Morgan,* 313 F.3d 1160, 1167 (9th Cir. 2002), *cert. denied,* 539 U.S. 916 (2003). If the highest state court fails to explain its decision, this court looks to the last reasoned state court decision. *See Brown v. Palmateer,* 379 F.3d 1089, 1092 (9th Cir. 2004).

Federal review is limited to those issues that have already been fully presented to the state court. This so-called "exhaustion rule" reads in pertinent part as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State. . . .

28 U.S.C. § 2254(b)(1)(A). This rule permits the states "the initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971).

To be properly exhausted, the federal claim must be "fairly presented" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971). In other words, the state courts must be apprised of the legal issue and given the first opportunity to rule on the merits. *Id.* at 275-76. Accordingly, the petitioner must "present the state courts with the same claim he urges upon the federal courts." *Id.* The state courts have been given a sufficient opportunity to hear an issue when the petitioner has presented the state court with the issue's factual and legal bases. *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999).

In addition, the petitioner must explicitly alert the state court that he is raising a federal constitutional claim. *Duncan v. Henry*, 513 U.S. 364, 366 (1995); *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), as modified 247 F.3d 904 (9th Cir. 2001); *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). The petitioner must make the federal basis of the claim explicit either by citing specific provisions of federal law or federal case law, even if the federal basis of a claim is "self-evident," *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), *cert. denied*, 528 U.S. 1087 (2000), or by citing state cases that explicitly analyze the same federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

If the petitioner is in custody pursuant to a judgment imposed by the State of Arizona, he must present his claims to the state appellate court for review. *Swoopes v. Sublett*, 196 F.3d 1008 (9th Cir. 1999), *cert. denied*, 529 U.S. 1124 (2000). If state remedies have not been exhausted, the petition may not be granted and should ordinarily be dismissed. *See Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991). In the alternative, the court has the authority to deny on the merits rather than dismiss for failure to exhaust. 28 U.S.C. § 2254(b)(2).

A claim is "procedurally defaulted" if the state court declined to address the issue on the merits for procedural reasons. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). Procedural default also occurs if the claim was not presented to the state court and it is clear the

state would now refuse to address the merits of the claim for procedural reasons. *Id.* A claim that is procedurally defaulted must be denied unless the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

### The Photographic Lineup

In ground (I), Stevenson argues his due process rights were violated when evidence was presented at trial of a pretrial identification procedure that was unduly suggestive.

Evidence presented at trial of an out-of-court identification may violate due process if the identification procedure created "a very substantial likelihood of irreparable misidentification." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Id.* "[T]he central question, [is] whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id.* at 199. "As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199-200.

Stevenson presented this issue on direct appeal. The court of appeals held Stevenson's "right to a fair trial under the Fourteenth Amendment" was not violated because the pretrial procedure was not "unduly suggestive." (Answer, Exhibit L, pp. 34.) Specifically, the court found the suspects in the photo-lineup basically resemble one another and the defendant's photo does not stand out. *Id.* "Each of the subjects included in the lineup were non-Caucasian, light skinned males with dark hair; all but one appeared to be African American." *Id.* "Although the

defendant was the only person in a red shirt, it was no more distinctive in nature than the orange, white, or black shirts worn by the others." *Id.* "Likewise, the difference in the background color of the defendant's photograph does not render it impermissibly suggestive." *Id.* This court finds the decision of the state court of appeals was not "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d).

Stevenson argues the decision of the court of appeals was unreasonable. He maintains the lineup was suggestive because his photo shows him wearing a red shirt on a uniquely colored background. (Petition, p. 20.) Also, his was the only photo of a "light skinned black male with a jeri curl that is short on the top and long on the back" as described by the two witnesses. *Id.* The court does not agree with Stevenson's analysis.

As the court of appeals observed, the six photos in the lineup basically resembled one another. There were differences between the individuals to be sure, but those differences were not so extreme as to highlight any one individual.

Stevenson further argues the court of appeals did not apply the *Bigger* factors, which show the lineup was suggestive. The court does not agree. Further analysis of the totality of the circumstances does not lead this court to conclude the lineup violated due process.

The witnesses were shown the lineup eight days after the shooting. (Petition, p. 20.) This interval of time is short enough that the memory of the incident was still relatively fresh. Prior to viewing the lineup, the witnesses were read the following instruction:

> I want to show you a group of photos. This group may or may not contain a photo of someone you will recognize. The suspect in this case may or may not be in this group. Keep in mind that hairstyles, beards, and mustaches are easily changed. The photos do not always depict a person's true complexion. Look at all the photos, and if you recognize anyone, tell me who and from where.

(Answer, p. 66.) This instruction lessens the risk that a witness will assume that the suspect is in the lineup and feel pressure to identify a suspect. Both witnesses were quite firm in their conviction that Stevenson was the shooter. Ward chose Stevenson's picture and stated, "That looks like him" and "That's the guy with the gun." (Answer, p. 9.) Upon further reflection she said, "That is definitely the guy who killed the younger guy." *Id.* Maya pointed to Stevenson's

picture and said he "more or less" looked like the shooter and then identified him as "the one who had the gun." (Answer, p. 11.)

Both witnesses had adequate opportunity to view the suspect. Ward did not observe the conversation for an extended length of time, but saw the suspect close up when she approached Curtis and asked him for change. (Answer, pp. 7, 86.) Maya observed the conversation from across the parking lot for approximately one-half hour. *Id.*, p. 11.

Both witnesses gave fairly consistent descriptions of the suspect. Ward said he was "older" with "Jerry curls" wearing "all black," "jean gear," "a black hat," and "some like brown snake skin shoes." *Id.*, p. 8. Maya said he was a light skinned black male "kind of tall," "like kind of fat," larger and older than the victim sporting "a real light mustache" and hair that was long and "kind of curly." *Id.*, p. 10.

Both witnesses had an adequate opportunity to observe the suspect and both were able to describe the suspect in some degree of detail indicating they had formed an independent memory of the suspect's appearance. Accordingly, when confronted with the lineup they were likely to identify the person they actually saw rather than someone whose picture stood out as different from the others.

Moreover, other factors indicate the lineup was not so suggestive as Stevenson argues. When the lineup was presented to Maya at trial, he failed to pick out Stevenson's photo. In fact, he identified a different individual as the shooter. (Answer, p. 81.) Moreover, after the incident, the police showed the lineup to two other witnesses, Franklin and Sedano, and neither picked out Stevenson's picture. *Id.* If the lineup were suggestive, presumably these witnesses would also have picked out Stevenson's picture.

Based on the totality of the circumstances, this court concludes the lineup was not impermissibly suggestive. The court of appeals did not unreasonably apply "clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d); *See, e.g., U.S. v. Burdeau*, 168 F.3d 352, 357 (9th Cir. 1999) (Photo lineup was not impermissibly suggestive where "[the defendant's] picture was placed in the center of the array,

was darker than the rest, and was the only one in which the eyes were closed."), *cert. Denied*, 528 U.S. 958 (1999).

Stevenson analyzes the facts somewhat differently and concludes there was a likelihood of misidentification. (Petition, pp. 18-22.) He notes that Ward's description of the shooter was inconsistent. *Id.* She had significant health issues and was a drug abuser. *Id.* He also disputes the level of certainty the witnesses displayed when they chose his picture from the lineup. *Id.* Assuming arguendo he is correct about these points, he still cannot show the court of appeals applied Supreme Court law unreasonably.

Stevenson has identified no Supreme Court case in which the Court found a due process violation on facts similar to these. In fact, the Court has specifically stated that "the admission of evidence of a showup without more does not violate due process." *Biggers* 409 U.S. at 198. If a showup can pass Constitutional muster (and it is difficult to imagine a pretrial identification process that is less suggestive), surely the photo lineup in this case did not violate due process. *But see, e.g., Foster v. California*, 394 U.S. 440, 442-43 (1969) (Lineup procedure was unfair where the witness finally made a definitive identification after viewing a lineup, where the defendant was the tallest of the three men and the only one wearing a leather jacket, followed by a "one-to-one confrontation" with the defendant followed by a *second* lineup, where "[the defendant] was the only person in this lineup who had also participated in the first lineup."). And even if it did, the court of appeals decision to the contrary was not unreasonable. *See Vlasak v. Superior Court of California ex rel. County of Los Angeles,* 329 F.3d 683, 687 (9th Cir. 2003) (A decision is an "unreasonable application" if "the state court identified the correct legal principles, but applied those principles . . . in a way that was not only incorrect or clearly erroneous, but objectively unreasonable.").

Stevenson further argues the ruling of the court of appeals is not entitled to deference because that court based its decision on an examination of a *different* photo lineup than the one used at trial and showed to the witnesses, Ward and Maya. (Petition, p. 20.) Stevenson however is unable to meet his burden to prove this factual assertion.

The source of this claim is more than a little confusing. Apparently, during discovery defense counsel was given a different photo lineup than the one actually shown to the witnesses. (Answer, pp. 64, 67.) Defense counsel attached this false lineup to Stevenson's pretrial motion to suppress pretrial identification. *Id.* The error was discovered when the genuine lineup was produced at the hearing, but the confusion did not die. *Id.* Later, when Stevenson filed his direct appeal, the state attached this false photo lineup to its answering brief in the mistaken belief that it was the genuine lineup. *Id.*, pp 69-70.

That error prompted Stevenson to assert in his subsequent Rule-32 petition that the court of appeals based its ruling on a picture of the wrong lineup. *Id.* The trial court, however, rejected Stevenson's allegations ruling that "the Defendant has presented no evidence that the prosecution substituted a new photo lineup for the *Dessureault* hearing or that the Court of Appeals used the wrong photo lineup in reaching its ruling." *Id.*, p. 71. The court of appeals affirmed summarily.

The trial court made a finding of fact that the court of appeals was given the same lineup that was used at trial and shown to the witnesses after the shooting. This finding is presumed to be correct and will not be disturbed unless the petitioner produces clear and convincing evidence to the contrary. *See* 28 U.S.C.A. § 2254 (e)(1). Stevenson has not done so. In fact, aside from his speculation based on these admittedly confusing circumstances, he has produced no evidence at all that the court of appeals analyzed the wrong lineup. Accordingly, Stevenson's argument must be rejected.

The court further finds that even if Stevenson's allegation were true, this court's analysis would be essentially unchanged. The false lineup contained the same six photos as the correct lineup although the placement of the individuals on the sheet (aside from the defendant) varied somewhat. *See* (Petition, pp. 5-6, n. 1.) Also, the backgrounds of some of the pictures may have been somewhat different between the two lineups. *Id.* Accordingly, even if this false lineup is the one actually viewed by the witnesses and used during the trial, the court concludes it too was not improperly suggestive, and its use did not violate due process.

Jury Instructions

In his second ground for relief, Stevenson argues the trial court erroneously instructed the jury on the element of premeditation. He argues this error is structural and requires reversal without harmless error analysis. He argues in the alternative that the error was not harmless. The court does not agree.

"In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). "Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Id.* "The question is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process." *Id.* (internal punctuation removed). "A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* (internal punctuation removed) "If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Id.* (internal punctuation removed).

If due process was violated, habeas relief is available only "if the flaw in the instructions had substantial and injurious effect or influence in determining the jury's verdict." *Hedgpeth v. Pulido*, __ U.S. __, __, 129 S.Ct. 530, 531 (2008); *See Inthavong v. Lamarque*, 420 F.3d 1055, 1059 (9th Cir. 2005), *cert. Denied*, 547 U.S. 1059 (2006).

In this case, the trial court gave the following jury instruction on the elements of first-degree and second-degree murder:

> The crime of First Degree Murder by premeditation requires proof of the following three things: One, the defendant or an accomplice caused the death of another person; and two, the defendant or an accomplice intended or knew he would cause the death of another person; and three, the defendant or an accomplice acted with premeditation.

> "Premeditation" is where the defendant or accomplice acts with the intention or knowledge he will kill another human being, when such an intention or knowledge precedes the killing by any length of time [to] permit reflection. *Proof of actual reflection is not required*, but an act is not done with premeditation if it is the instant effect of sudden quarrel or heat of passion.

The crime of First Degree Murder includes the less serious crime of Second Degree Murder. You may consider this lesser offense if you either, one, find the defendant not guilty on the greater charge; or two, after reasonable efforts, cannot agree whether to acquit or convict on that greater charge.

The difference between First Degree, Premeditated Murder and Second Degree Murder is that Second Degree Murder does not require premeditation by the defendant or an accomplice.

(Answer, pp. 92-93)(emphasis added). At trial, the court overruled Stevenson's objection to the inclusion of the phrase, "[p]roof of actual reflection is not required." *Id.*, p. 93. In closing, the prosecutor commented on the reflection period as follows: "There's no particular period of time that a defendant has to have in order to be able to premeditate." *Id*.

On direct appeal, Stevenson argued inclusion of this phrase was reversible error. The court of appeals agreed the phrase was error but concluded it was harmless. The decision of the court of appeals reads in pertinent part as follows:

The element of premeditation was not a central issue in this case. The defendant did not contest the manner of the victim's murder; his defense was misidentification. Indeed, the defendant objected to the State's request for an instruction on second-degree murder. . . .Under these circumstances, we can conclude beyond a reasonable doubt that the error in the other portion of the premeditation instruction and the prosecutor's comments thereon did not contribute to or affect the verdict in this case.

(Answer, p. 94.)

Stevenson filed a motion for reconsideration arguing in part that the instruction could not be harmless where the trial court found the evidence of a sudden quarrel sufficient to warrant instructing the jury on the lesser included offense of second-degree murder. (Answer, Exhibit M.) The court of appeals denied the motion clarifying its rationale as follows:

Although the premeditation instruction improperly informed the jury that "[p]roof of actual reflection is not required," it also instructed the jury that "an act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion." Harmless error analysis is not inappropriate simply because the jury is instructed on both first- and second-degree murder.

(Answer, Exhibit O.) The decision of the court of appeals was not an "unreasonable application of clearly established Federal law." *See* 28 U.S.C. § 2254(d).

First, the court of appeals was correct to subject Stevenson's claim to harmless error analysis. The instructional error here, at most, eliminated the element of premeditation from

the offense of first-degree murder. The omission of an element of the offense in the jury instructions is subject to harmless error analysis. *Hedgpeth v. Pulido*, __ U.S. __, __, 129 S.Ct. 530, 531 (2008); *Middleton v. McNeil* 541 U.S. 433, 437 (2004), *Neder v. U.S.*, 527 U.S. 1, 15 (1999).

Structural error, on the other hand, requires automatic reversal without harmless error analysis. This type of error occurs when there is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Neder v. U.S.*, 527 U.S. 1, 8 (1999). "[T]hese errors deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence and no criminal punishment may be regarded as fundamentally fair." *Neder v. U.S.*, 527 U.S. 1, 8 (1999) (punctuation omitted). The Supreme Court has found structural error where there is "complete denial of counsel," a "biased trial judge," "racial discrimination in selection of grand jury," "denial of self-representation at trial," "denial of public trial," or a "defective reasonable-doubt instruction." *Id.*

In this case, there was an error in the description of one of the elements of the offense of conviction. This was not an error in the trial process itself. Accordingly, this was not a structural error. The state court of appeals did not unreasonably apply Supreme Court law when it subjected this claim to harmless error analysis.

Stevenson further argues the erroneous jury instruction fails harmless error analysis. The court does not agree. Viewed in the context of the overall charge, the erroneous instruction was unlikely to confuse the jury. Moreover, the state produced ample evidence of premeditation, and the defendant did not contest the issue at trial.

The state concedes the instruction, "[p]roof of actual reflection is not required," is error because it appears to contradict the state's burden to prove premeditation. *See Arizona v. Thompson*, 204 Ariz. 471, 480, 65 P. 3d 420, 429 (2003) (explaining that this phrase was intended to lessen the state's *evidentiary* burden but leave unaltered premeditation as an element of the offense). Read in isolation, this instruction could be construed in a way that eliminates premeditation as an element of the offense of first-degree murder. Instructions, however, are

not read in isolation. When viewed in the context of the jury charge as a whole, it is unlikely that this instruction adversely affected the jury's understanding of the elements of first-degree murder.

Just before reading the misleading instruction, the court charged the jury on the elements of first-degree murder. The court clearly and correctly explained that premeditation is an element of first-degree murder. Immediately following the misleading instruction, the court correctly explained that "an act is not done with premeditation if it is the instant effect of sudden quarrel or heat of passion." Two paragraphs later, the court clearly and correctly explained to the jury that premeditation is the only element that separates first-degree murder from second-degree murder. Viewed in the context of the overall charge, it is unlikely that the misleading instruction caused the jury to return a verdict of first-degree murder without first finding Curtis's murder was premeditated. *See, e.g., Middleton v. McNeil* 541 U.S. 433, 437(2004) ("Given three correct instructions and one contrary one, the state court did not unreasonably apply federal law when it found that there was no reasonable likelihood the jury was misled.").

Moreover, as the court of appeals stated, premeditation was not a contested issue in this case. The defendant's theory of the case was that the state could not prove the shooter's identity beyond a reasonable doubt. (Answer, pp. 96-99.) He never challenged the state's assertion that the shooting was premeditated, and with good reason: there was ample evidence of premeditation. Curtis's meeting with his assailant was prearranged. His assailant brought a gun to the meeting. The shooting took place after an extended conversation of approximately 30 minutes. And, Curtis was killed by a single shot to the back of the head. *See, e.g., Neder v. U.S.*, 527 U.S. 1, 16-17 (1999) (Erroneous jury instruction on the element of materiality was harmless where evidence on the issue was "overwhelming" and the defendant did not contest the issue.).

The state court of appeals found the instructional error was harmless because Stevenson did not contest the element of premeditation and the remainder of the jury charge correctly defined that element of the offense. This decision was not an unreasonable application of Supreme Court law.

<u>Hearsay</u>

Stevenson argues trial counsel was ineffective in his objection to the admission of Curtis's out-of-court statements.

"The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel." *Luna v. Cambra*, 306 F.3d 954, 961(9th Cir. 2002), reissued as amended, 311 F.3d 928 (9th Cir. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668 (1984)). Habeas relief, however, is available only if "counsel's performance was deficient" and the "deficient performance prejudiced the defense." *Id.* To show prejudice, the petitioner "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because Stevenson challenges his conviction, he must show "there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.*

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal citation omitted).

Prior to trial, counsel filed a motion to preclude Sweeney's hearsay testimony as to what the victim told him over the phone. (Petition, pp. 27-29.) The trial court ruled the statements were admissible under the present sense impression exception. *Id.* Stevenson argues trial counsel's performance was ineffective because he allowed the prosecutor to embellish the content of the statements. *Id.* He maintains the prosecutor misrepresented those statements saying that Curtis said "*Derrick* has a gun" or "*Dizzy* is here now." *Id.* (emphasis added). He

argues counsel should have contested the prosecutor's assertions and emphasized the fact that Curtis never explicitly referred to him by name. (Petition, pp. 27-29.) He maintains Curtis only made statements such as "That *nigga* had a gun" or "That *nigger* is here now." *Id.* (emphasis added). He concludes that "absent the trial court's erroneous belief that the victim used the Petitioner's names it would not have found the statement[s] a reliable present sense impression." (Petition, p. 29.) The court does not agree. Stevenson's argument would not have changed the trial court's ruling.

The present sense impression exception to the hearsay rule permits the introduction of "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Arizona Rules of Evidence, Rule 803. Here, the trial court found the victim's statements such as "Derrick has a gun" or "Dizzy is here now" were admissible because they were made just as the event was happening. The trial court's ruling would be the same if Curtis had used the phrase "that nigga" instead of the name "Derrick" or "Dizzy." Specific identification of the actor is not important to the ruling. If trial counsel had made this argument, the trial court still would have found the statements admissible.

Stevenson cannot show trial counsel's litigation of the hearsay issue was deficient performance or that he suffered prejudice thereby. Accordingly, the trial court's conclusion that counsel was not ineffective was not unreasonable.

Counsel's Performance at the Lineup Hearing

Stevenson argues trial counsel's litigation of the lineup issue was deficient. He maintains counsel should have noticed that the wrong lineup was presented to the court. Also, counsel "failed to present either identification witness, the two witnesses who failed to identify Petitioner, Ward's prior deposition testimony where she looked at Petitioner and avowed he was

not the shooter,[1] or show that Petitioner's photo was purposefully placed in the center number 5 spot . . . ." (Petition, pp. 29-30.) In addition, Stevenson argues trial counsel should have analyzed all the *Bigger* factors and emphasized that his picture was the only one with a "highly colored background." *Id.* The respondents argue some of these issues were not properly exhausted, but the court will deny all on the merits. *See* (Answer, pp. 34, 45, 50); 28 U.S.C. § 2254(b)(2).

As stated above, Stevenson has provided no evidence that the trial court made its ruling based on viewing the wrong lineup. He also has presented no evidence that the state "purposefully" placed his picture in the center of the bottom row of pictures.

Moreover, although Stevenson lists evidence counsel should have presented, he does not explain how this evidence would have changed the trial court's ruling. Evidence that two witnesses did not identify his picture in the lineup and evidence that Ward later stated that he was not the shooter would seem to show that the lineup was *not* suggestive. He chides counsel for failing to produce Ward and Maya for the pretrial hearing, but he does not explain what they would have said and how their testimony would have changed the trial court's ruling. As the court explained above, the *Bigger* factors do not necessarily support a finding that the lineup was unduly suggestive.

Stevenson cannot show trial counsel's litigation of the lineup issue was deficient performance or that he suffered prejudice thereby. Accordingly, the trial court's conclusion that counsel was not ineffective was not unreasonable.

Ineffective Handling of Prosecutorial Misconduct

Stevenson argues trial counsel improperly handled the prosecutor's incorrect assertion that he was the subject of a fugitive warrant. (Petition, p. 31.)

---

[1] After Ward identified Stevenson in the photo lineup, she stopped cooperating with the police. (Answer, p. 9.) She was then incarcerated and compelled to undergo a videotaped deposition. *Id.* At that deposition, she repudiated all her prior statements incriminating Stevenson. *Id.*

During the trial, the state introduced evidence that Stevenson fled the state after the shooting. Detective Laird testified that police conducted surveillance of Stevenson's house, interviewed his neighbors, contacted his friends and relatives, traveled to Stevenson's home state of Oregon, contacted other law enforcement, obtained a fugitive warrant for Stevenson, and contacted the television show, *America's Most Wanted.* (Answer, pp. 119-20.) Stevenson was eventually arrested in Schaumberg, Illinois in August of 2001. Stevenson's trial counsel objected to this line of questioning as irrelevant and prejudicial. *Id.*, p. 122. The trial court sustained the objection and instructed the prosecutor to move on. *Id.* In closing argument, the prosecutor again stated that Stevenson was arrested on a fugitive warrant. *Id.*, pp. 122-23. Trial counsel did not object to the statement.

Stevenson raised this issue during his Rule 32 proceeding. The trial court found Stevenson had not shown that he was prejudiced by the remark. The court of appeals summarily denied review. The trial court's decision that counsel was not ineffective was not unreasonable. *See Brown v. Palmateer,* 379 F.3d 1089, 1092 (9th Cir. 2004) (If the highest state court fails to explain its decision, this court looks to the last reasoned state court decision.).

The state presented ample evidence that Stevenson fled the jurisdiction after the shooting. The state's assertion that he was finally arrested pursuant to a fugitive warrant added little.

Stevenson further argues trial counsel was ineffective for mishandling other instances of prosecutorial misconduct. The respondents argue these issues were not properly exhausted. They are correct.

None of these other issues were presented to the court of appeals. Some of these allegations were presented in the context of a pure claim of prosecutorial misconduct. (Answer, Exhibit AA.) None of them, however, were presented as instances of ineffective assistance of trial counsel. Stevenson failed to apprise the court of appeals below of the legal basis of his claims. Accordingly, they were not properly exhausted. (Answer, pp. 51-53.) Moreover, Stevenson cannot now return to the court of appeals and exhaust them because the deadline for filing a petition for review with the court of appeals has already run out. *Id.*; Ariz.R.Crim.P.

32.9. Also, he is precluded from raising them in a subsequent Rule 32 petition. *Id*.; Ariz.R.Crim.P. 32.2. His claims are procedurally defaulted. Stevenson does not argue cause and prejudice or raise the miscarriage of justice exception. *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). His claims must be dismissed.

Stevenson further claims his appellate counsel's performance with regard to the lineup issue was deficient. He maintains counsel gave the wrong lineup photo to the court of appeals. As stated above, Stevenson has provided no evidence that the wrong lineup was given to the court of appeals. Counsel was not ineffective.

Finally, Stevenson claims appellate counsel was ineffective for failing to raise numerous instances of prosecutorial misconduct. The respondents argue these claims were not properly exhausted. They are correct.

These claims were not presented to the state court of appeals. Accordingly, they were not properly exhausted. (Answer, pp. 48-49; Exhibit AA.) Moreover, Stevenson cannot return to state court and exhaust them now because he is precluded from raising these issues in a subsequent Rule 32 petition. *Id*. ; Ariz.R.Crim.P. 32.2. His claims are procedurally defaulted. Stevenson does not argue cause and prejudice or raise the miscarriage of justice exception. *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). His claims must be dismissed.


RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order DENYING the Petition for Writ of Habeas Corpus. [doc. #1]

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 10 days of being served with a copy of this report and recommendation. If objections are not timely filed, the party's right to de novo review may be waived. *See U. S. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

The Clerk is directed to send a copy of this report and recommendation to the petitioner and the respondents.

DATED this 2nd day of November, 2009.

Glenda E. Edmonds
United States Magistrate Judge